# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

FELICIA ROSS,              )      CASE NO. 5:14-cv-1886
                             )
                             )
           PLAINTIFF,     )      JUDGE SARA LIOI
                             )
vs.                           )
                             )      **MEMORANDUM OPINION**
ROCKWELL AUTOMATION, et al.,  )
                             )
                             )
           DEFENDANTS.    )

Before the Court is the motion to dismiss (Doc. No. 8) filed by Rockwell Automation. Plaintiff filed her brief in opposition. (Doc. No. 9 ["Opp'n"].) Defendant filed a motion to strike plaintiff's opposition; that document alternatively supplied a reply. (Doc. No. 10.) For the reasons discussed herein, defendant's motion is granted[1] and this case is dismissed with prejudice.

## I. BACKGROUND

Pro se plaintiff, Felicia Ross ("Ross" or "plaintiff") filed this action on August 25, 2014, having been granted leave to proceed *in forma pauperis*. Despite its length, the complaint alleges in only very broad, general, and conclusory terms that co-workers at Rockwell Automation ("Rockwell" or "defendant") subjected plaintiff to a generally hostile work environment, which possibly included one undescribed incident of sexual harassment, as well as comments regarding her age and her religion, and also retaliated against her due to her work

---

[1] The Court denies defendant's motion to strike the opposition brief. Although the opposition brief does not comply with the local rules regarding length of briefs, the Court prefers to excuse that failure, since plaintiff is proceeding pro se. The Court will not, however, consider any of the documents attached to the opposition, since this matter is before the Court on a motion to dismiss, where only the pleadings are to be considered.

ethic, the way she dressed, and her religious beliefs. On October 16, 2014, the seven individually-named defendants were *sua sponte* dismissed under 28 U.S.C. § 1915(e) because none of them qualify as an "employer" for purposes of any of the possibly relevant statutes. (*See* Doc. No. 4.) Rockwell, the sole remaining defendant, has now moved to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6).

## II. DISCUSSION

### A.    Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted

2

factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (applying former version of the statute); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990) (same).

**B.    Analysis**

Affording the complaint as broad a reading as possible, plaintiff is arguably attempting to assert claims of a hostile work environment (due to her age and/or religion), failure to accommodate her religious beliefs, retaliation, and sexual harassment.

All claims of discrimination in employment start with the requirement that a plaintiff plead, at a minimum, sufficient facts to set forth a prima facie case of the relevant form of discrimination. Formulaic recitations and key phrases lifted from the statutes or case law that "are no more than conclusions" will not satisfy this requirement. *Iqbal*, 556 U.S. at 678-79. A prima facie case of discrimination generally requires one to show membership in the relevant protected class, an employer's adverse employment action improperly motivated by that protected status, and different treatment from others similarly situated.

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" To establish a prima facie case, plaintiff "must produce evidence (1) that [s]he was over the age of forty, and therefore a member of the class of persons protected by the ADEA; (2) that [Rockwell] subjected [her] to an adverse employment action; (3) that [s]he was qualified for the position; and (4) that [Rockwell] replaced [her] with someone who was 'substantially younger than' [her]." *Williams v. Union Underwear Co., Inc.*, No. 14-6359, 2015 WL 3514384, at *6 (6th Cir. June 5, 2015) (citations and footnote omitted); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

"Under Title VII, a plaintiff establishes a prima facie case of a hostile work environment based on … religion … by demonstrating that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on … religion …; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Ejikeme v. Violet*, 307 F. App'x 944, 949 (6th Cir. 2009) (citations omitted). "Employer liability for co-worker harassment is based directly on the employer's conduct." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) (citation omitted). A plaintiff can also make a claim for religious discrimination if her employer fails to accommodate a religious practice, that is, if a protected characteristic is a "motivating factor" in the employer's hiring decision. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, -- U.S. --, 135 S. Ct. 2028 (2015) (employer refused to hire practicing Muslim woman because her headscarf conflicted with employee dress policy).

Claims of discriminatory retaliation require a showing that a person engaged in some protected activity, that the employer knew of that activity, that the employer took some adverse employment action against the person, and that the adverse action was causally

connected to the protected activity. *Briggs v. Univ. of Detroit-Mercy*, No. 14-1725, 2015 WL 2191127, at *5 (6th Cir. May 12, 2015) (citation omitted).

To state a claim of sexual harassment, or hostile work environment based on sexual harassment, a plaintiff must show that she was actually subjected to unwanted sexual conduct, based on her sex, that this conduct interfered with her work, and that the employer knew or should have known of the harassment yet failed to take action. *Valentine-Johnson v. Roche*, 386 F.3d 800, 813-14 (6th Cir. 2004) (citation omitted).

Plaintiff's complaint is very inartfully drafted,[2] but the Court has endeavored to identify some substance in the document. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief.") (internal quotation marks and citation omitted). In the opening paragraph of her complaint, Ross alleges that she was "unjustly Discriminated against religiously, under the Civil Rights Act Title VII of 1964 and Age Discrimination, by Rockwell employees." In paragraphs identified as "facts," plaintiff generally alleges:

Fact 1:  that she was "harassed" by a co-worker "because of [her] religion and because of [her] work ethics and the way [she] dressed";

Fact 2:  that this harassment "caused a hostile work environment" wherein she felt "very intimidated";

Fact 3:  that she was "treated differently and harassed, retaliated against" by another co-worker who "tried to find fault with [her] work because he was prejudice[d] against [her] because of [her] work ethics" and because she worked for "less pay"; that she "reported sexual harassment" to her supervisor "about an employee named Robert";

---

[2] Similarly, her opposition brief is close to incomprehensible, consisting of 62 pages full of words, only occasionally interrupted by commas or periods, and, even then, not in any manner that gives meaning to the jumble of those words. Although the Court has done its best to find the meaning in plaintiff's filings, it is highly possible that a different reader will discern different meanings.

Fact 4:          that she was "treated different" from other contract workers[3] who "were making big mistakes" but were not "held accountable";

Fact 5:          that she was "harassed, and intimidated" by four co-workers because she "had them working faster than any other employee ever had them, they did not like that so they sabotaged [her] work, and then blamed [her]"; that same day, she was "called an old Bitch" by a co-worker who "often did that";

Fact 6:          that a co-worker called her names and "hated [her] because of [her] religion" and for being "different"; and another co-worker called her "church lady every single day";

Fact 7:          that she was "laughed at" for not being hired as a fulltime employee; was called "an old Lady"; was subjected by her co-workers to "a hostile intimidating work environment" because she was "a new comer that made them look bad" since she wanted to do a good job and the other employees hated her "work ethics as well as how [she] dressed and how [she is] different because of [her] religious beliefs"; "on any given day they would make [her] life at Rockwell Automation a living hell, sabotaging [her] work";

Fact 8:          that co-workers "sabotaged" her work and, when she reported it to Human Resources, exhibited "a lot of hostility";

Fact 9:          that when she reported another employee as "a possible threat to the company" she "was retaliated against because of it";

Fact 10:        that Rockwell and its employees treated her differently by preventing her "from going to the company meeting all other employees were told to go [to]"; she was treated this way "because of [her] age [and her] religion"; she was called "a Bitch" and "an old bitch" by another employee; she was criticized for always wearing dresses and was "called church lady every single day";

Fact 11:        that her "Equal employment opportunities were denied" by Rockwell and she was "subjected to so much unfair treatment" by employees who "made [her] days hell"; she reported this to her supervisor and Human Resources; she "couldn't produce the normal work" that she otherwise would have;

---

[3] The Court notes that the complaint repeatedly states that Ross was a "contract worker." In the paragraph identified as "Fact 5," she suggests she may have actually been employed by "Cortech." Because Rockwell does not raise any argument in this regard, for purposes of this motion, the Court is treating Ross as an "employee" of Rockwell.

Fact 12:      that employees "suggested that [she] should work weekends, [which was] Religious discrimination";

Fact 13:      that she "was not given the rights of an interview" for "A shift" and was told only "C shift" (*i.e.*, weekend shift) was available; she complained to her supervisor;

Fact 14:      that she stated she would not work "Sundays because [she goes] to church" nor "evenings because [she has] a dance ministry on Wednesday nights";

Fact 15:      that she is "a very religious person [who] refused to work on Sundays" and "always expressed [her] religion by [her] work ethics" and that she "was never told or written up for any[] negative work habits."

Plaintiff's complaint fails with respect to all its claims. Title VII and similar laws protecting civil rights are not meant to set a general civility code for the workplace. *Ceckitti v. City of Columbus, Dept. of Pub. Safety, Div. of Police*, 14 F. App'x 512, 518 (6th Cir. 2001) ("Title VII was not meant to be, and Courts must ensure that it does not become a 'general civility code.'") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). "In other words, the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012); *see also Hoffman v. Saginaw Pub. Sch.*, No. 12-10354, 2012 WL 2450805, at *1 (E.D. Mich. June 27, 2012) (dismissing under R. 12(b)(6) claims brought on behalf of a child whose harassment at school included "wishing M.M. happy birthday when it was not his birthday, teasing him when he said he did not plan on attending a school dance, ignoring him on a school field trip, throwing food at him, mocking his posture, and referring to him 'as a lesbian, gay, or a hermaphrodite.'").

7

With respect to her claims of hostile work environment, plaintiff alleges that her co-workers treated her badly because she was "different" in that she allegedly had a better "work ethic" than they did and "made them look bad" as a result. She also alleges that her co-workers called her "old lady" and "church lady"; but, even assuming the truth of these allegations, "they do not rise to the level of discriminatory harassment [based on age and/or religion]. Rather, they are more appropriately categorized as offhand comments and isolated incidents." *Burdette v. Fed. Exp. Corp.*, 367 F. App'x 628, 633 (6th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff's claim of religious discrimination based on failure to accommodate also cannot survive. She claims that her religious practice of attending church on Sunday was not accommodated because she was hired for C shift, requiring that she work weekends. She claims she should have been hired for A shift; but at the time plaintiff was hired for her position, she was told Rockwell was not hiring for A shift because there were no openings. It was hiring only for C shift. These facts do not support a claim of failure to accommodate.

There are *no* allegations that satisfy the elements of a claim of retaliation as set forth in *Briggs*, *supra*. Her conclusory assertion that she was "retaliated against" is completely unconnected to any protected activity and is more in the nature of a claim that she was simply treated badly by co-workers.

As to sexual harassment, she claims she was harassed by an employee named Robert, that she complained to her supervisor, and that Robert was first moved to a different department and later fired. (Opp'n at 80, 121.) Accepting these assertions as true, plaintiff's claim of sexual harassment does not survive.

8

Finally, to extent plaintiff may be asserting that she was discriminated against based upon her age, her complaint is devoid of any of the required elements to establish a prima facie case.

Liberal construction of pro se pleadings has its limits and does not abrogate basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Taking as true all the allegations in the complaint, plaintiff primarily sets forth a workplace scenario where she was disliked by her co-workers for a multitude of reasons. This is not the type of "hostile work environment" the civil rights statutes were meant to address.

Finally, the Court notes that plaintiff has not sought leave to amend and, in any event, the Court is not required to permit amendment where such would be futile. *Morse v. McWorter*, 290 F.3d 795, 800 (6th Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Under Fed. R. Civ. P. 15(a)(1)(B), plaintiff had the right to amend her complaint "once as a matter of course" either 21 days after she served it, or 21 days after the defendant served its motion under Rule 12(b). She did not do so. Moreover, in light of plaintiff's factual allegations, it appears that any opportunity to amend would be futile: that of which she complains does not give rise to actionable claims.

## III. CONCLUSION

For the reasons discussed above, plaintiff's complaint does not satisfy even the liberal pleading standards afforded pro se litigants. She has not stated any claim for which she is entitled to relief. As a result, defendant Rockwell Automation is entitled to dismissal of this action with prejudice.

**IT IS SO ORDERED**.

Dated: June 30, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**